DUNCAN MCDOUGALD, APPELLANT, VS. ARABELLA HEPBURN, APPELLEE.

A wife is not entitled to dower in shares of stock of a Land Company disposed of during the life time of the husband.

Appeal from a decree of Franklin Circuit Court.

Arabella Hepburn filed her bill for dower in the Court below, against the appellant and several others, defendants, in which she alleges that Burton Hepburn, deceased, of whom she is widow, during his life time, and during the coverture of complainant, was seized in fee simple of an undivided one fifth part or interest, in common with Daniel K. Dodge, James C. Watson, Daniel McDougald, and James S. Calhoun & Charles L. Bass, composing the firm of Calhoun & Bass, of and in sundry lots in the city of Apalachicola; that said lots were conveyed to the above named parties and their heirs by the Trustees of the Apalachicola Land Company, by deed bearing date the first day of October, 1837. The bill claims dower in the premises conveyed by the deed aforesaid, and prays that one third part of the proportional share of Burton Hepburn be assigned to complainant as and for her dower therein.

McDougald, in his answer, admits that during the coverture of complainant, Burton Hepburn, her late husband, took two deeds in fee simple, in common with said Dodge, Watson, Daniel McDougald, and Calhoun & Bass, of and unto certain lots in the city of Apalachicola, one dated the first day of October, 1837, and the other dated the 14th day of September, 1836, which deeds covered the property set out in the bill of complaint. The answer further alleges that prior to the execution of either of the deeds aforesaid, Daniel McDougald, Burton Hepburn, Daniel Dodge,

Calhoun & Bass, Jonathan A. Hudson, John W. Campbell, John Dill, and others, formed themselves into a Company, or co-partnership, by the name and style of the Franklin Land and Town Lot Company, in the city of Apalachicola, and the said Company associated Daniel K. Dodge, Daniel McDougald, Burton Hepburn, and the other parties named in the deeds aforesaid, agents to make a contract for the purchase of lots in the city of Apalachicola; that their said agents, in pursuance of said trusts, did make a contract for the benefit of said Company, for the lots conveyed in the two deeds aforesaid; that after the terms of said contract were complied with, the Company directed Burton Hepburn, and the other parties named in said deeds, to receive from the trustees of the Apalachicola Land Company deeds for the lots in Apalachicola, which deeds were to be taken in the name of said Burton Hepburn, and the other parties therein named, as Trustees of the Franklin Land and Town Lot Company, for the uses and purposes set forth in their articles of association, but by mistake the said deeds were made to Burton Hepburn, and the other parties therein named, in fee simple, instead of being made to them as Trustees aforesaid; that as well as himself, (the respondent,) said Hepburn and his co-Trustees were ignorant of the mistake, and always regarded said deeds as deeds of trust, and so regarding it, continued from time to time to execute the trusts reposed in them by the Company.

· The answer further alleges that the whole property of the Company was divided into sixty-four fractional parts, and that scrip or certificates were given to each shareholder, defining his quantum of interest, and binding the Trustees to make title to each shareholder for his share, so soon as the liabilities of the Company, then existing and therefore to accrue, in the erection of buildings, &c., should

be discharged, which liabilities were to be discharged by instalments, to be called in by the Trustees ; that said scrip or certificates were transferable only on the books of the Company ; that Burton Hepburn received a certificate, signed by himself and his co-Trustees, for eight fractional shares, being eight sixty-fourths, or one full eighth, and that on the first day of February, 1851, Hepburn transferred to James C. Watson seven sixty-fourths of his share, and on the sixth day of February, he transferred to S. R. Bonner his remaining one sixty-four, or one eighth of a share of one eighth, and that by other transfers, he, McDougald, became the owner of the share originally belonging to Hepburn, to which he afterwards obtained a deed. The answer further alleges that the share of Hepburn, after the transfer of his interest, was levied upon as the property of Hepburn, and sold under execution, and respondent, McDougald, was obliged to purchase the same to quiet his title previously acquired.

The answer also alleges that the interest of Hepburn was indebted for improvements made, &c., and that a decree was rendered against said interest by Franklin Circuit Court, and paid off and discharged by respondent, McDougald ; and it is insisted, by reason of the premises, complainant is not entitled to the prayer of her bill.

The answer of the other defendants admits the coverture of complainant, and that Hepburn was seized of one eighth of said real estate ; that the conveyance on its face seemed to be in fee simple, in his own right, for one fifth, but that as to all except one eighth, they believe he held in trust for others. These defendants allege that the interest of Burton Hepburn has been set apart, and can be traced into the hands of the present owner, and they insist that if complainant is entitled to Dower, the same must be allot-

ted from the separate interest of Burton Hepburn, wherefore they pray to be dismissed, &c;

‑ There appears in the record a copy of the minutes of a meeting of the Franklin Land and Town Lot Company, purporting to be held on the 2d April, 1836, composed of Daniel McDougald, Burton Hepburn, Daniel K. Dodge, and others, at which was adopted the articles of association referred to in the answer of McDougald; accompanied by a copy of said articles of association, by which Daniel McDougald, James C. Watson, Burton Hepburn; D. K. Dodge, and James S. Calhoun, were appointed agents and Trustees for all concerned, and were authorized to receive titles in their names, for the lots purchased, and to sell and dispose of the same on such terms as they might think most to the advantage of the Company.

It was further stipulated that the Trustees should issue scrip, as stated in the answer of McDougald, and after payment of the purchase money, the Trustees were to distribute the remainder of the lots to the Company, according to their respective shares and interests. No transfer of such interest was to be binding unless entered on the books of the Company.

No other evidence appears in the record.

On the 16th April, 1851, an order was made by the Court below, directing McDougald to employ counsel in the stead of his former counsel, who had died, and on his failing to do so, the complainant was allowed to proceed *ex parte*. At the April Term, 1853, the Court below, by decree, awarded dower to complainant as prayed in her said bill, from which decree McDougald appealed.

By consent of counsel in this Court, it was agreed that the general replication to the answer of the defendants be considered as having been filed in the Court below, and deemed to be inserted in the record;

24

*T. J. Eppes* for Appellant.

*W. G. M. Davis* for Appellee :

1. The bill alleges the seizure of Hepburn during the coverture ; this is all that is necessary to give dower.

2. The answer admits this allegation, and no proof was necessary to sustain what the answer admitted.

3. The matters set up in the answer to avoid the fact of seizure, alleged in the bill and admitted in the answer, not being supported by any proof, cannot be considered by the Court. This is decided at this term, in the case of Orman vs. Barnard, Adams & Co.

BALTZELL, C. J., delivered the opinion of the Court:

This is a suit in Chancery, instituted by Mrs. Arabella Hepburn, to obtain dower in certain land and lots lying in and near Apalachicola, which she claims through' her deceased husband, the late Burton Hepburn.

The counsel of McDougald having died, a rule was taken upon him to employ new counsel, which he failing to do, complainant was allowed to proceed *ex parte*. It does not appear how the case was submitted to the Court, no order for the hearing having been made. In the final decree rendered, it would seem to have been tried upon " the bill, answer of the defendants, and evidence." In this Court, it was agreed that a replication had been filed in the Court below, so that we are to treat the case as if tried upon bill, answer, replication and evidence. If the object of the plaintiff was to establish his case by proof, not satisfied with the admissions in the answer, he has most signally failed, as there is not, independent of the answer, a word of proof in the record, no deposition of a witness, and no writing of any character. Reliance seems to have been placed,

in argument, upon the answer of the other defendants, but we think it very clear that this is not evidence. The other defendants were but nominal parties, and had no identity of interest with plaintiff. "It is a general and almost universal rule that the answer of one defendant cannot be read as evidence against another." 1 Green., § 178 ; 2 Dan'l. Ch. Pr., 981.

If the answer of McDougald is to be excluded as evidence, as has been contended in argument here, there is not the slightest foundation for the decree. We, however, proceed to ascertain the extent to which it may be used, desirous of disposing of the case as far as possible on the merits. "If a replication be filed, the answer is not evidence in the defendant's favor, but the plaintiff may use any portion of it, without admitting the remainder to be read, except so far as it is explanatory of the portion used." Adams' Equity, 20, 21. A difficulty arises in the present case from the want of the order submitting the case to the Court. If part only of the answer was read, it should have been so stated, and then the question would arise of reading the other passages, or of throwing the burthen of proving independent facts upon defendant. As the case was tried *ex parte*, the presumption is against complainant, that the entire answer was read. Regarding it in this point of view, we proceed to examine if plaintiff has shown an equity, for in this event we should incline to remand the case, with permission to amend the pleadings, and for further hearing.

The answer, whilst admitting that Hepburn and others took deeds in fee, alleges " that prior to their execution, a Company was formed by these parties, and others, to be called the Franklin Land and Town Lot Company, and that they appointed Hepburn, Dodge, and others, agents to purchase lots in Apalachicola ; that these agents did make a pur-

chase of the lands and lots, and were directed to take deeds in their names, as trustees of said association, and they file copy of the articles of association ; that by mistake, the deeds were made to them in fee simple, and not as trustees ; that they always regarded it as a trust ; that the whole property was divided into 64 fractional parts, and that said trustees gave certificates, or scrip, to each shareholder for his share, binding themselves to make titles to each share holder, so soon as the liabilities of the Company, then existing or to accrue in the erection of buildings, &c., should be discharged ; that Hepburn took a certificate, signed by himself and co-trustees, for one full eighth which was assigned and transferred by him, in his life time, to Bonner & Watson, and by them to others, who transferred to defendant."

The complainant has confirmed this view of the answer, by taking her decree not for an interest to the extent which she would be entitled to by the deeds, but regulated by the extent of the shares which her husband held. Is this interest or ownership of shares in a Company, such as is here described, subject to dower of the wife ? In the case of Blake vs. Jones, the Supreme Court of South Carolina treated " a certificate of this kind as nothing more than an equitable agreement, a chose in action," although the land vested in the scripholder by the original grant. 1 Bailey, 147.

In Gilman vs. Brown, jr., which involved the validity of the title to shares in the lands of the New England Mississippi Land Company, plaintiff was declared entitled to shares of the common stock of the Company, and not to the interest of one of the original grantees. 1 Mason, 210. It is there stated that one amongst many reasons for the forming a Company, was to give a negotiable quality to the stock or property, which, without impairing the great ob-

jects of the association, might facilitate the transfer of shares in the property, and give it a marketable value. Now it is readily perceived that if certificates of shares were liable to a claim for dower in the hands of every assignee to whom they might be transferred, the very objects designed in forming such an association would be defeated.

These authorities, with those cited in the very conclusive argument of defendant's counsel, and which were not controverted on the other side, leave no room to doubt that the complainant is not entitled to the relief she prays.

It is therefore decreed and ordered that the decree of the Circuit Court be reversed and set aside, with costs, and the cause remanded to that Court, with direction to dismiss the bill, with costs.

A petition for a re-hearing was presented by the appellee in this cause, which was refused by the Court,